**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | | |
|---|---|---|
| UNILOC 2017, LLC and UNILOC USA INC., <br><br> Plaintiffs | § <br> § <br> § <br> § | |
| v. <br><br><br> GOOGLE LLC, <br><br> Defendant. | § <br> § <br> § <br> § <br> § <br> § <br> § | Case No. 2-18-cv-00493-JRG-RSP <br><br> JURY TRIAL DEMANDED |

## DEFENDANT GOOGLE LLC'S PATENT RULE 3-3 INVALIDITY CONTENTIONS

Defendant Google LLC ("Defendant" or "Google"), by its attorneys, makes these Invalidity Contentions concerning U.S. Patent No. 6,836,654 (the "Asserted Patent" or "'654 patent"): claims 1, 3-5, 10, 11, and 13[1], to Plaintiffs Uniloc 2017, LLC and Uniloc USA, Inc. ("Plaintiffs" or "Uniloc") in connection with the above-referenced action, pursuant to the Docket Control Order entered by the Court (Dkt. No. 36) and Local Patent Rule ("P.R.") 3-3.

Google's Invalidity Contentions herein reflect Google's knowledge as of this early date in the present action. Google reserves the right, to the extent permitted by the Court and the applicable statutes and rules, including but not limited to P.R. 3-6, to modify and/or supplement its Invalidity Contentions in response to becoming aware of additional prior art or information regarding prior art, any modification or supplementation of Uniloc's Infringement Contentions, any claim construction by the Court, or as otherwise may be appropriate.

The Docket Control Order and the Patent Rules contemplate that these Invalidity Contentions would be prepared and served in response to Uniloc's Infringement Contentions. Uniloc's

---

[1] These claims of the Asserted Patent are collectively referred to herein as the "asserted claims." Although Uniloc's P.R. 3-1 Infringement Contentions contain a header suggesting that "Claims 1-5, 10-11, and 13" are asserted, only claims 1, 3-5, 10, 11, and 13 are charted.

144906512.3
144906512.4

Infringement Contentions, however, are deficient at least insofar as they fail to articulate how any single accused product, system, or application (or its use) infringes each and every element of any of the asserted claims, and Google reserves the right to amend its Invalidity Contentions in response to any permissible supplementation or amendment of Uniloc's Infringement Contentions. Due to Uniloc's failure to provide proper and complete disclosure of its Infringement Contentions under P.R. 3-1, Google reserves the right to seek leave from the Court to amend these Invalidity Contentions should Uniloc be allowed by the Court to amend its Infringement Contentions or its apparent claim constructions. Google also reserves the right to amend these Invalidity Contentions in light of positions that Uniloc or its expert witnesses may assert concerning claim construction, infringement, and/or invalidity issues.

Google's Exhibits attached hereto cite to particular teachings and disclosures of the prior art as applied to features of the asserted claims. However, persons having ordinary skill in the art generally may view an item of prior art in the context of other publications, literature, products, and understanding. As such, the cited portions of prior art identified herein are exemplary only. Google may rely on the entirety of the prior art references listed herein, including un-cited portions of those prior art references, and on other publications and expert testimony shedding light on those prior art references, including as aids in understanding and interpreting the cited portions, as providing context thereto and as additional evidence that the prior art discloses a claim limitation.

Google will also rely on documents, products, testimony, and other evidence to establish bases for and motivations to make combinations of certain cited references that render the asserted claims obvious. Google may rely upon corroborating documents, products, testimony, and other evidence including materials obtained through further investigation and third-party discovery of the prior art identified herein that describes the invalidating features identified in these Contentions; evidence of the state of the art in the relevant time period (irrespective of whether

2

such references themselves qualify as prior art to the Asserted Patent), including prior art listed on the face of the Asserted Patent and/or disclosed in the specification ("Admitted Prior Art"); and/or expert testimony to provide context to or aid in understanding the cited portions of the identified prior art.

The references discussed in the Exhibits herein disclose the elements of the asserted claims explicitly or inherently, and/or they may be relied upon to show the state of the art in the relevant time frame. To the extent the attached claim charts cite to a reference for each element or limitation of an asserted claim, Google contends that such reference anticipates that claim. In addition, to the extent that the attached claim charts cite to additional references, Google contends, in the alternative, that the asserted claim is rendered obvious for the reasons set forth in the attached charts. To the extent suggested obviousness combinations are included in the attached claim charts, they are provided in the alternative to Google's anticipation contentions and are not to be construed to suggest that any reference included in the combinations is not by itself anticipatory.

For purposes of these Invalidity Contentions, Google identifies prior art references and provides element-by-element claim charts based, in part, on the apparent claim constructions advanced by Uniloc in its Infringement Contentions.

To the extent that these Invalidity Contentions reflect or otherwise embody particular constructions of terms or phrases in the asserted claims, Google is not proposing any such constructions as proper constructions of those terms or phrases.  Various positions put forth in these Invalidity Contentions are predicated on Uniloc's incorrect and overbroad interpretation of its claims as evidenced by its Infringement Contentions provided to Google.  These Invalidity Contentions are not intended to, and do not necessarily, reflect Google's interpretation of the true and proper scope of the asserted claims.  Nothing stated herein shall be treated as an admission or suggestion that Google agrees with Uniloc regarding either the scope of any of the asserted claims

3

or the claim constructions advanced in the Infringement Contentions.  Google reserves the right to adopt claim construction positions that differ from or even conflict with the positions put forth in this document.

In those instances where Google asserts the asserted claims are invalid under 35 U.S.C. § 112 (*e.g.*, no written description, not enabled, and/or indefinite), Google has applied the prior art in accordance with its assumption that Uniloc contends such asserted claims (1) are definite, (2) have written description support, and (3) are enabled, as evidenced by Uniloc's Infringement Contentions.  As such, Google's Invalidity Contentions do not represent its agreement or view as to the meaning, definiteness, written description support for, or enablement of any asserted claim. Moreover, nothing in these Invalidity Contentions shall be treated as an admission that any of Google's accused technology meets any limitations of the claims.  The citation of prior art herein and the accompanying Exhibits are not intended to reflect Google's claim construction contentions, which will be disclosed in due course in accordance with the Docket Control Order, and may instead reflect Uniloc's apparent (and potentially erroneous) claim constructions based on its Infringement Contentions.

Pursuant to P.R. 3-3 and 3-4, Google has provided disclosures and related documents pertaining only to the asserted claims as identified by Uniloc in its Infringement Contentions. *See* GOOG-UNI493-00003078 – GOOG-UNI493-00004761.  Google will further supplement its P.R. 3-4 document production should it later find additional, responsive documents, such as documents produced by third-parties. Much of the art identified below reflects common knowledge and the state of the art prior to the filing date of the Asserted Patent.

Each of the asserted claims[2] of the Asserted Patent is anticipated by and/or obvious in view

---

[2] For reasons analogous to those identified herein, Google contends all *non-asserted* claims of the Asserted Patent are invalid as anticipated and/or obvious in view of the prior art or indefinite.

4

of one or more items of prior art identified herein, alone or in combination. Specific examples of this anticipation and obviousness, along with the motivation to combine the prior art, are set forth in Section IV. Google further reserves the right to assert additional theories of invalidity not addressed or required to be disclosed in its P.R. 3-3 Invalidity Contentions, including invalidity under 35 U.S.C. §§ 101 and 112.

In addition to the prior art identified below and the accompanying invalidity claim charts, Google also incorporates by reference as if set forth herein any additional invalidity contentions, identified prior art, or invalidity claim charts or arguments already disclosed or that will be disclosed at any later date in the present, parallel, or related litigation, foreign or domestic, by Google or any other individual or entity to any other litigation or U.S. Patent & Trademark Office ("USPTO") proceeding involving the asserted patents or any related patent, including, without limitation, any invalidity contentions, applications, or petitions drafted, served, or filed (or that will be drafted, served, or filed) by any party, including those in any co-pending current, past or future litigations.  For example, Google further relies on and incorporates all prior art references cited in and/or on the cover of the '654 patent and their respective prosecution histories, including for supporting the obviousness of any asserted claim.  Google further relies on and incorporates by reference, as if originally set forth herein, all invalidity positions, and all associated prior art and claim charts, disclosed to Uniloc by present or former defendants in any lawsuits or other proceedings[3] or by potential or actual licensees to any of the asserted claims.  Moreover, Google incorporates by reference any prior art identified and/or invalidity claim charts set forth in any

---

[3] These lawsuits and proceedings include, but are not limited to, *Uniloc 2017 LLC v. Apple Inc.*, 3:19-cv-001697 (N.D. Cal.); *Uniloc 2017 LLC v. HTC America, Inc.*, 2:18-cv-01732 (W.D. Wa.); *Uniloc 2017 LLC v. Motorola Mobility, LLC*, 1:18-cv-0844 (D. Del.); *Uniloc 2017 LLC v. Huawei Device USA, Inc.*, 2:18-cv-00509 (E.D. Tex.); *Uniloc 2017 LLC v. Samsung Elecs. Am.*, 2-18-cv-00508 (E.D. Tex.); and *Uniloc 2017 LLC v. Microsoft Corp.*, 8-19-cv-00781 (C.D. Cal.).

5

petition, application or submission to the USPTO involving and/or challenging the validity of the Asserted Patent, including, but not limited, in any *inter partes* review petitions and/or proceedings involving the Asserted Patent.[4]  Google hereby discloses and identifies as if originally set forth herein, all prior art references listed and/or asserted in the above as invalidating prior art against each of the asserted claims.

## I.     PRIORITY

In its Infringement Contentions, Uniloc contends that each of the asserted claims of the Asserted Patent are entitled to a priority date "not later than December 21, 1999." As an initial matter, by including the "not later than" language in its priority claim, Uniloc has asserted an open-ended priority date in violation of this Court's Local Patent Rules.  Indeed, P.R. 3-1(e) requires that a plaintiff identify "*the priority date* to which each asserted claim allegedly is entitled" – not a start date, end date, or date range.  That being said, none of the asserted claims are entitled to a priority date of December 21, 1999.  The French patent application (Serial Number 9916136) filed on that date, and to which Uniloc alleges supports priority of the Asserted Patent, does not sufficiently disclose all claim limitations.  To the extent that Uniloc is permitted to modify, and in fact modifies in any manner, the alleged date to which the Asserted Patent is entitled to priority, Google reserves the right to respond and challenge that date to the extent required by law to satisfy its burden.  Without admitting the priority of that early priority date, Google uses December 21, 1999 as the priority date for the purposes of these Invalidity Contentions.

## II.    STATE OF THE ART

The references discussed in the Exhibits herein may be relied upon to show the state of the art in the relevant time frame. This prior art identification is only exemplary and is not in any way

---

[4] These proceedings include but are not limited to, *Samsung Elecs. Am., Inc.*, Case No. IPR2019-01218 (June 19, 2019); *Samsung Elecs. Am., Inc.*, Case No. IPR2019-01219 (June 19, 2019).

144906512.3
144906512.4

intended to limit the scope of what one of ordinary skill in the art would have understood at the relevant time period of the alleged invention or the breadth of the state of the art to which the alleged invention of the Asserted Patent relates. Google reserves the right to rely upon additional prior art, information, testimony, and/or knowledge to demonstrate what one of ordinary skill in the art would have understood prior to the date of the alleged invention of the asserted claims of the Asserted Patent.

## III.     IDENTIFICATION OF PRIOR ART – LOCAL PATENT RULE 3-3(A)

In addition to the prior art identified in the prosecution history of the Asserted Patent, Google intends to rely upon the prior art identified pursuant to P.R. 3-3(a) below in support of these Invalidity Contentions. In these Contentions, Google provides the full identity of each item of prior art, including: (1) each patent by its patent number, country of origin, and date of issue; (2) each non-patent publication by its title, date of publication, and, where feasible, author and publisher; (3) 35 U.S.C. § 102(b) prior art by the item offered for sale or publicly used or known, the date the offer or use took place or the information became known, and the identity of the person or entity which made the use or which made and received the offer, or the person or entity which made the information known or to whom it was made known; (4) 35 U.S.C. § 102(f) prior art by the name of the person(s) from whom and the circumstances under which the invention or any part of it was derived; and (5) 35 U.S.C. § 102(g) prior art by the identities of the person(s) or entities involved in and the circumstances surrounding the making of the invention before the patent applicant(s), based on currently available information.

Google's identification of patents and publications as prior art herein and in the attached claim charts under 35 U.S.C. §§ 102(a), (b), (e), and/or (g) and § 103 includes the publications themselves as well as the use of the products, devices, and systems described therein. Although

Google's investigation continues, information available to date indicates that such products, devices, and systems were known or used in the country before the alleged invention of the claimed subject matter of the asserted claims, and/or were invented by another who did not abandon, suppress, or conceal, before the alleged invention of the claimed subject matter of the asserted claim. Upon information and belief, these prior art products, devices, and systems and their associated references anticipate and/or render obvious each of the asserted claims. Google further intends to rely on inventor admissions concerning the scope of the prior art relevant to the Asserted Patent found in, *inter alia*, the prosecution history of the Asserted Patent and any related patents, patent applications, and/or re-examinations; any deposition testimony of the named inventor on the Asserted Patent; and the papers filed and any evidence submitted by Uniloc in conjunction with this litigation.

Google reserves the right to rely upon additional evidence of invalidity obtained from third-parties in the future. In addition, Google reserves the right to assert invalidity under 35 U.S.C. § 102(c) or (d) to the extent that further investigation and discovery yield information forming the basis for such claims.

## A.      Prior Art Patents

Google contends the following prior art patents anticipate or render obvious one or more asserted claims of the Asserted Patent under 35 U.S.C. §§ 102(a), (b), and/or (e) or 35 U.S.C. § 103:

| Patent | Inventor | Filing Date/Priority Date | Published/Issue Date | Short Name |
|---|---|---|---|---|
| GB 2314739 | Cha | Filed: Jun. 26, 1997 | Jan. 7, 1998 | Cha |
| GB 2324004 | Park | Filed: Jan. 22, 1998 | July 10, 1998 | Park |
| JP H6-216841 | Matsukida | Filed: Jan. 20, 1993 | Aug. 5, 1994 | Matsukida |
| JP H1023530A | Oshibe | Filed: Jul. 7, 1996 | Jan. 23, 1998 | Oshibe |
| US 4,494,114 | Kaish | Filed: Dec. 5, 1983 | Jan. 15, 1985 | Kaish |
| US 4,868,846 | Kemppi | Filed: Jul. 19, 1988 | Sep. 19, 1989 | Kemppi |

| US 5,146,068 | Ugawa | Filed: Nov. 28, 1990 | Sep. 8, 1992 | Ugawa |
|---|---|---|---|---|
| US 5,212,810 | Maeda | Filed: Jun. 15, 1990 | May 18, 1993 | Maeda |
| US 5,266,782 | Alanara | Filed: Mar. 22, 1991 | Nov. 30, 1993 | Alanara |
| US 5,319,711 | Servi | Filed: Aug. 19, 1992 | Jun. 7, 1994 | Servi |
| US 5,444,764 | Galecki | Filed: Jul. 1, 1993 | Aug. 22, 1995 | Galecki |
| US 5,517,554 | Mitchell | Filed: Jul. 8, 1994 | May 14, 1996 | Mitchell |
| US 5,600,708 | Meche | Filed: Aug. 4, 1995 | Feb. 4, 1997 | Meche |
| US 5,625,869 | Nagamatsu | Filed: Mar. 25, 1994 | Apr. 29, 1997 | Nagamatsu |
| US 5,699,514 | Durinovic-Johri | Filed: Dec. 26, 1995 | Dec. 16, 1997 | Durinovic-Johri |
| US 5,715,311 | Sudo | Filed: Aug. 31, 1995 | Feb. 3, 1999 | Sudo |
| US 5,781,856 | Jacobs | Filed:  May 5, 1997 | Jul. 14, 1998 | Jacobs |
| US 5,864,757 | Parker | Filed: Dec. 12, 1995 | Jan. 26, 1999 | Parker |
| US 5,913,175 | Pinault | Filed: Dec. 20, 1996 | Jun. 15, 1999 | Pinault |
| US 5,933,773 | Barvesten | Filed: May 12, 1997 | Aug. 3, 1999 | Barvesten-I |
| US 5,940,773 | Barvesten | Filed: Sep. 15, 1995 | Aug. 17, 1999 | Barvesten-II |
| US 5,978,670 | Casoli | Filed: May 6, 1996 | Nov. 2, 1999 | Casoli |
| US 5,983,093 | Haimi-Cohen | Filed: Aug. 6, 1997 | Nov. 9, 1999 | Haimi-Cohen |
| US 5,987,325 | Tayloe | Filed: May 17, 1997 | Nov. 16, 1999 | Tayloe |
| US 6,049,712 | Wallinder | Filed: Dec. 15, 1997 | Apr. 11, 2000 | Wallinder |
| US 6,095,416 | Grant | Filed: Feb. 4, 1998 | Aug. 1, 2000 | Grant |
| US 6,125,283 | Kolev | Filed: May 18, 1998 | Sep. 26, 2000 | Kolev |
| US 6,141,563 | Miller | Filed: Dec. 16, 1997 | Oct. 31, 2000 | Miller |
| US 6,145,083 | Shaffer | Filed: Sep. 28, 1998 | Nov. 7, 2000 | Shaffer |
| US 6,360,326 | Hiles | Filed: Sep. 9, 1998 | Mar. 19, 2002 | Hiles |

144906512.3
144906512.4

| US 6,449,492 | Kenagy | Filed: Dec. 2, 1999 | Sep. 10, 2002 | Kenagy |
| US 6,526,277 | Zicker | Filed: Sep. 27, 1996 | Feb. 25, 2003 | Zicker |
| US2001/0013098 | Angelo | Filed: Aug. 29, 1997 | Aug. 9, 2001 | Angelo |
| US2001/0036299 | Senior | Filed: May 15, 1998 | Nov. 1, 2001 | Senior |
| US2002/0147028 | Alos | Filed: Dec. 11, 1998 | Oct. 10, 2002 | Alos |
| WO 98/57511 | Sandgren | Filed: Jun. 8, 1998 | Dec. 12, 1998 | Sandgren |

### B.   Prior Art Publications

Google contends the following publications anticipate or render obvious one or more asserted claims of the Asserted Patent under 35 U.S.C. §§ 102(a) and/or (b) or 35 U.S.C. § 103:

| Author or Publisher | Reference Title | Publication / Use Date | Short Name |
|---|---|---|---|
| Nokia | User's Manual for the Nokia 9000i Communicator, Issue 1.1 | At least as of October 1997 | Nokia 9000i Manual |
| European Telecommunications Standards Institute | Digital cellular telecommunications system (Phase 2+); Man-Machine Interface (MMI) of the Mobile Station (MS) (GSM 02.30) | July 1996 | GSM Technical Specification |
| Ericsson Review | Universal Personal Telecommunication (UPT) – Concept and Standardisation | 1993 | Ericsson Review 1993 |
| Ericsson Review | Implementation of UPT – Universal Personal Telecommunication | 1994 | Ericsson Review 1994 |
| Nokia | User's Manual for the Nokia 9110 Communicator | 1999 | Nokia 9110 Manual |
| Charles Schultz | Communications Devices Inactivity Password Lock | November 1996 | Schultz |
| Ericsson | User's Manual for the Ericsson R320s Mobile Phone, First Edition | June 1999 | R320 Manual |
| Ericsson | User's Manual for the Ericsson I 888 World Mobile Phone | October 1998 | I 888 Manual |

10

144906512.3
144906512.4

| Ericsson | User's Manual for the Ericsson SH 888 Mobile Phone | April 1998 | SH 888 Manual |
|---|---|---|---|
| Qualcomm | User's Manual for the Qualcomm QCP 860 and 1960 Thin Phone | January 1999 | Qualcomm Thin Phone Manual |
| European Telecommunications Standards Institute | ETSI TS 121 111 v3.0.1 Universal Mobile Telecommunications System (UMTS); USIM and IC Card Requirements | 1999 | TS 121 111 |
| European Telecommunications Standards Institute | TS 100 922 v6.0.0 Digital cellular telecommunications system (Phase 2+); Subscriber Identity Modules (SIM); Functional characteristics | November 1998 | ETSI SIM Standard |
| Institute of Electrical and Electronics Engineers | IEEE 802.3 Part 3: Carrier sense multiple access with collision detection (CSMA/CD) access method and physical layer specifications | 1998 | IEEE 802.3 |
| Telecommunications Industry Association | Mobile Station - Base Station Compatibility Standard | November 1999 | AMPS Standard |
| Apple Computer, Inc. | Apple MessgaePad Handbook | 1995 | Apple Message Pad |
| 3Com Corporation | Handbook for the Palm VII Organizer | 1998 | Palm Pilot VII |
| 3Com Corporation | PalmPilot Handbook | 1997 | Palm Pilot |
| Smart Modular Technologies Inc. | The HP Palmtop Paper | 1995 | HP Palmtop 1995 |
| Smart Modular Technologies Inc. | The HP Palmtop Paper | 1996 | HP Palmtop 1996 |
| Apple Computer, Inc. | eMate 300 User's Manual | 1997 | Apple eMate 300 |
| Aculab | Basic Rate Card Prosody Module | July 1, 1997 | Aculab |
| Emad Dean S. Ammouri | A Study on The Client/Server Technology Using NOVELL's NetWare v3.1x | May 1996 | Ammouri |
| Brooktrout Technology | Brooktrout Technology Vantage Series | June 1999 | Brooktrout |

11

| Business Wire | Dialogic DM3 IPLink 2.0 Breaks IP Telephony Density Barrier | August 1998 | Business Wire |
| Jonathan Feldman | Inside Intel's Wired for Management | October 4, 1999 | Feldman |
| Brandon Friesen | Fast Fax Over IP First Looks | May 1999 | Friesen |
| Richard Grigonis | IP Voice/Fax Gateways: A Buyer's Guide: LAN Strategies and Solutions | May 1998 | Grigonis |
| Alan Hasling and Jay Milne | Multihoming and NT:  A WINning Combination | October 1, 1997 | Hasling |
| John Jainschigg | Build your own Gateway | April 1999 | Jainschigg |

| Russ Kahan | IPT board-set buyers' guide | September 1998 | Kahan |
| Aculab | Millennium-CT System Configuration Manual | February 28, 1998 | Millennium |
| Aculab | Prosody ISA Card Installation Instructions | October 22, 1999 | Prosody |
| Newswire | Texas Instruments Expands DSP-Based TImebuilder ™ Portfolio Adding MystiCom's Digital Ethernet Physical Interface | August 30, 1999 | TImebuilder |
| Active Voice | Unity:  Communications Server | 1999 | Unity |
| Jutta VanStean | ARP | July 1999 | VanStean |

## C.    Prior Art Systems

Google contends the following prior art systems anticipate or render obvious one or more asserted claims of the Asserted Patent under 35 U.S.C. §§ 102(a),(b), and/or (g), or 35 U.S.C. §103:

| System Name | Use/Knowledge/Offer Date | Publisher | Short Name |
|---|---|---|---|
| Nokia 9000i Communicator | At least as of October 1997 | Nokia | Nokia 9000i System |
| IBM Simon | At least as of August 1994 | IBM | IBM Simon |

12

| | | | |
|---|---|---|---|
| Ericsson R320s | At least as of June 1999 | Ericsson | Ericsson R320s |
| Ericsson I 888 WORLD | At least as of October 1998 | Ericsson | Ericsson I 888 |
| Ericsson SH 888 | At least as of April 1998 | Ericsson | Ericsson SH 888 |
| Qualcomm Thin Phone Model QCP-860 | At least as of January 1999 | Qualcomm | Qualcomm Thin Phone |
| Qualcomm Thin Phone Model QCP-1960 | At least as of January 1999 | Qualcomm | Qualcomm Thin Phone |
| Windows 95 | At least as of August 1995 | Microsoft | Windows 95 |
| Windows 98 | At least as of June 25, 1998 | Microsoft | Windows 98 |
| Unix X11 xScreenSaver | At least as of 1987 | Unix | X11 |
| DM3 Mediastream | At least as of April 1998 | Dialogic Corp. | DM3 Mediastream |
| Crystal LAN CS8900A Ethernet Controller | At least as of April 1999 | Cirrus Logic | Cirrus 8900A |
| Fast EtherLink XL PCI 10/100BASE-TX Network Interface Card | At least as of February 1998 | 3Com | 3Com PCI Card |
| Nokia 9110 Communicator | At least as of 1998 | Nokia | Nokia 9110 System |
| Blackberry RIM 850 | At least as of January 1999 | Blackberry | Blackberry |

Google further intends to seek discovery regarding the above-mentioned prior art systems, in addition to other systems that may be related to the Asserted Patent and printed publication references disclosed in these contentions.

**D.     Prior Art under 35 U.S.C. § 102(f)**

144906512.3
144906512.4

Google will assert that the Asserted Patent is invalid under 35 U.S.C. § 102(f) in the event

Google obtains evidence that the named inventor of the Asserted Patent did not alone invent the

subject matter claimed in the Asserted Patent. Should Google obtain such evidence, Google will

provide the name of the person(s) from whom and the circumstances under which the invention or

any part of it was derived.

**E.      Prior Art under 35 U.S.C. § 102(e) and 35 U.S.C. § 102(g)**

At present, Uniloc has neither adequately alleged nor provided sufficient evidence of a

conception date for the Asserted Patent earlier than the claimed priority date on the face of the

Asserted Patent. Should the Court permit Uniloc to provide evidence of an earlier conception date,

Google reserves the right to assert that any of the § 102(a) prior art is § 102(e) and/or § 102(g)

prior art.

Google contends that each of the disclosures in Sections III.A. (list of prior art patents),

III.B. (list of prior art publications), and III.C. (list of prior art systems) constitute prior inventions

to the asserted claims as detailed above.

**IV.      LOCAL PATENT RULES 3-3(B) AND (C)**

In addition to and including the prior art disclosed in the Exhibits incorporated by reference

herein, each of the asserted claims of the Asserted Patent is anticipated by and/or obvious in view

of one or more of items of prior art identified above in Sections III.A. (list of prior art patents),

III.B. (list of prior art publications), and/or III.C. (list of prior art systems), alone or in combination.

Furthermore, along with the references disclosed in these contentions, the exhibits thereto,

the Asserted Patent and its prosecution history, and the common sense and understanding of those

in the relevant field at the time of the alleged invention, invalidity may be demonstrated by the live

testimony of relevant witnesses, who will be identified in accordance with the case schedule and

as discovery in this matter proceeds.  Such witnesses may be used, among other purposes, to

discuss issues of prior art systems, prior art references, and the knowledge of one of ordinary skill in the art at the time of the alleged invention.  Although information may be identified through discovery as this case proceeds, such witnesses may include at least the following individuals: Nokia 9000i and 9110 Communicators - Steve Jang, Todd Stumpf, Chung H. Liu, Rudy Nobel, Bill Devenish and other former employees or representatives of Nokia; Qualcomm QCP-860 - Jason B. Kenagy, Scott D. Beith, Marcello Lioy, Josh Steinmann and other former employees or representatives of Qualcomm; Qualcomm QCP-1960 - Jason B. Kenagy, Scott D. Beith, Marcello Lioy, Josh Steinmann and other former employees or representatives of Qualcomm; 3Com PCI Card - Jean Anderson Nancy Kurahashi and other former employees or representatives of 3Com; Cirrus 8900A - Deva Bodas James Ayres and other former employees or representatives of Cirrus Logic; IBM Simon - Frank J. Canova Jr., Brent A. Beatty, Charles S. Lanier, Wayne P. Whitley, Debra A.G. Johnson, Gary Wisgo, Jerry Merckel, Paul Mugge, and other former employees or representatives of IBM.  For other prior art systems identified by Google herein, Google has served or is serving subpoenas for documents and testimony related to  products, patents and/or publications, and specifically reserves the right to supplement its Contentions following additional discovery received.  Google further intends to seek discovery regarding the above-mentioned prior art systems, in addition to other systems, including, but not limited to, for instance, Ericsson R320s, Ericsson I 888, Ericsson SH 888, and Nokia 9110 Communicator, that may be related to the Asserted Patent and printed publication references disclosed in these contentions.

One or more combinations of the prior art references identified above pursuant to P.R. 3-3(a) would have been obvious because these references would have been combined using:  known methods to yield predictable results; known techniques in the same way; a simple substitution of one known, equivalent element for another to obtain predictable results; and/or a teaching, suggestion, or motivation in the prior art generally.  In addition, it would have been obvious to try

15

combining the prior art references identified above pursuant to P.R. 3-3(a) because there were only a finite number of predictable solutions and/or because known work in one field of endeavor prompted variations based on predictable design incentives and/or market forces either in the same field or a different one.  In addition, the combination of the prior art references identified above pursuant to P.R. 3-3(a) would have been obvious because the combination represents the known potential options with a reasonable expectation of success.

Additional evidence that there would have been a motivation to combine the prior art references identified above pursuant to P.R. 3-3(a) includes the interrelated teachings of multiple prior art references; the effects of the demands known to the design community or present in the marketplace; the existence of a known problem for which there was an obvious solution encompassed by the asserted claims; the existence of a known need or problem in the field of the endeavor at the time of the invention(s); and the background knowledge that would have been possessed by a person having ordinary skill in the art.

Thus, the motivation to combine the teachings of the prior art references disclosed herein is found in the references themselves and: (1) the nature of the problem being solved, (2) the express, implied, and inherent teachings of the prior art, (3) the knowledge of persons of ordinary skill in the art, (4) the fact that the prior art is generally directed towards antitheft security features for mobile phones, including timing locks and SIM cards linked to particular mobile phones, (5) the fact that the prior art generally is employed on similar mobile standards such as GSM, CDMA, and AMPS, and/or that certain manufacturers were understood to design and sell mobile devices compatible on a mobile subscriber network practicing the GSM, CDMA, and/or AMPS standard, and (6) the predictable results obtained in combining the different elements of the prior art. Additionally, one would be motivated to address at least the alleged problems or achieve the purported objectives identified in the description of the '654 patent.

144906512.3
144906512.4

Any reference or combination of references that anticipates or makes obvious an asserted independent claim also makes obvious any asserted claim dependent on that independent claim because every element of each dependent claim was known by a person of ordinary skill at the time of the alleged invention, and it would have been obvious to combine those known elements with the independent claims at least as a matter of common sense and routine innovation. Accordingly, Google contends that each asserted claim would have been obvious not only by the combinations explicitly defined in these contentions, but also by any combination of references that renders obvious an asserted claim.

Numerous prior art references, including those identified below pursuant to P. R. 3-3(a) and in the claim charts reflect common knowledge and the state of the prior art prior to the priority date of the '654 patent. As it would be unduly burdensome to create detailed claim charts for the thousands of invalidating combinations, Google has provided illustrative examples of such invalidating combinations below and in the charts attached hereto. For at least the reasons described above and below in the examples provided as well as in the attached claim charts, it would have been obvious to one of ordinary skill in the art to combine any of a number of prior art references, including any combination of those identified in the attached claim charts, to meet the limitations of the asserted claims. As such, Google's inclusion of exemplary combinations does not preclude Google from identifying other invalidating combinations as appropriate.

Google has attached Exhibits containing claim charts identifying examples of prior art that anticipate and/or render obvious each asserted claim of the Asserted Patent. Specifically, to the extent the attached claim charts cite to a reference for each element or limitation of an asserted claim, Google contends that such reference anticipates that claim. *See* Local Patent Rule 3-3(b) and (c). In addition, Google contends, in the alternative, that each asserted claim is rendered obvious for the reasons set forth in this document and the attached charts.

144906512.3
144906512.4

| Invalidity Charts |
|---|
| **Ex. 1** – Schultz |
| **Ex. 2** - Schultz in combination with ETSI SIM Standard |
| **Ex. 3** – Schultz in combination with Alos, Kemppi, Parker, Pinault, Haimi, and/or Meche |
| **Ex. 4** – IBM Simon |
| **Ex. 5** – IBM Simon in combination with Shaffer, X11, Windows 95, Windows 98, and/or Nokia 9000i |
| **Ex. 6** – Nokia 9000i |
| **Ex. 7** – Nokia 9000i in combination with Alos, Kemppi, Parker, Pinault, Haimi, and Meche |
| **Ex. 8** – Kenagy in combination with Haimi and/or ETSI SIM Standard |
| **Ex. 9** – Matsukida in combination with Haimi and/or ETSI SIM Standard |
| **Ex. 10** – Kenagy in combination with Galecki |
| **Ex. 11** – Kenagy in combination with Meche and/or ETSI SIM Standard |
| **Ex. 12** – Matsukida in combination with Meche and/or ETSI SIM Standard |
| **Ex. 13** – Ericsson R320s |
| **Ex. 14** – Ericsson R320s in combination with Nokia 9000i and/or Meche |
| **Ex. 15** - Ericsson R320s Manual in combination with ETSI SIM Standard |
| **Ex. 16** - Ericsson R320s Manual in combination with ETSI SIM Standard, Nokia 9000i System, and/or Meche |
| **Ex. 17** – Ericsson I 888 |
| **Ex. 18** – Ericsson I 888 in combination with Nokia 9000i and/or Meche |
| **Ex. 19** - Ericsson I 888 Manual in combination with ETSI SIM Standard |
| **Ex. 20** - Ericsson I 888 Manual in combination with ETSI SIM Standard, Nokia 9000i system, and/or Meche |
| **Ex. 21** – Ericsson SH 888 |
| **Ex. 22** – Ericsson SH 888 in combination with Nokia 9000i and/or Meche |
| **Ex. 23** - Ericsson SH 888 Manual in combination with ETSI SIM Standard |
| **Ex. 24** - Ericsson SH 888 Manual in combination with ETSI SIM Standard, Nokia 9000i system, and/or Meche |
| **Ex. 25** – Qualcomm Thin Phone Manual in combination with Jacobs |
| **Ex. 26** – Qualcomm Thin Phone Manual in combination with Jacobs, Kenagy, and/or Nokia 9000i system |
| **Ex. 27** - Qualcomm Thin Phone |

144906512.3
144906512.4

| |
|---|
| **Ex. 28** - Qualcomm Thin Phone in combination with Jacobs, Kenagy, and/or Nokia 9000i system |
| **Ex. 29** – Windows 95 in combination with Shaffer, Cirrus 8900A, and/or 3Com PCI Card |
| **Ex. 30** – Shaffer in combination with DM3 Mediastream |
| **Ex. 31** - Nokia 9110 |
| **Ex. 32** - Nokia 9110 in combination with Alos, Kemppi, Parker, Pinault, Haimi, and/or Meche |
| **Ex. 33** – Nokia 9110 User Manual in combination with ETSI SIM Standard |
| **Ex. 34** – Nokia 9110 User Manual in combination with ETSI SIM Standard, Alos, Kemppi, Parker, Pinault, Haimi, and/or Meche |
| **Ex. 35** - Nokia 9000i User Manual in combination with ETSI SIM Standard |
| **Ex. 36** – Nokia 9000i User Manual in combination with ETSI SIM Standard, Alos, Kemppi, Parker, Pinault, Haimi, and/or Meche |
| **Ex. 37** – Matsukida in combination with Alos, Kemppi, Parker, and/or Pinault |
| **Ex. 38** – Kenagy in combination with Alos, Kemppi, Parker, and/or Pinault |
| **Ex. 39** – TS 121 111 in combination with Matsukida and/or Meche |
| **Ex. 40** – Sudo in combination with Alos, Kemppi, Parker, Pinault, Haimi, and/or Meche |
| **Ex. 41** – Galecki in combination with Shaffer |
| **Ex. 42** – Windows 95 in combination with Shaffer |
| **Ex. 43** – Maeda in combination with Barvesten and/or Casoli |
| **Ex. 44** - Apple eMate 300 |
| **Ex. 45** - Apple Message Pad |
| **Ex. 46** - HP Palmtop |
| **Ex. 47** - Palm Pilot Handbook |
| **Ex. 48** - Palm Pilot VII |
| **Ex. 49** - Blackberry RIM 850 |
| **Ex. 50** - Pinault in combination with Casoli and Cha |

To the extent that Uniloc contends that any one of the primary references does not disclose one or more elements of the asserted claims, it would have been obvious to combine the primary references in the Invalidity Charts with one or more references, or in combination with Alos, Kemppi, Parker, Pinault, Haimi, and/or Meche, as discussed more fully below.

As detailed in the Invalidity Charts and in this document, the asserted claims of the

Asserted Patent are obvious in view of the state of the prior art (including Admitted Prior Art) alone and/or in combination with the references described in the above-referenced Exhibits as well as the references and disclosures described below. The alleged "inventions" claimed in the asserted claims of the Asserted Patent would have been obvious because the prior art, common knowledge, and the nature of the problems, viewed through the eyes of a person ordinarily skilled in the art, suggested the claimed elements. A person of ordinary skill in the relevant fields would have possessed knowledge and skills rendering him or her capable of combining the prior art references with knowledge in the field and common sense. Moreover, the asserted claims represent well-known combinations of familiar and pre-existing elements, yielding only predictable results. Additional reasons that a person of ordinary skill in the art would have been motivated to combine the identified prior art are provided in the Exhibits attached hereto.

The obviousness combinations set forth in these Contentions reflect Google's present understanding of the potential scope of the claims that Uniloc appears to be advocating and should not be seen as Google's acquiescence to Uniloc's interpretation of the asserted claims. Google reserves the right to amend or supplement these Contentions regarding anticipation or obviousness of the asserted claims as appropriate under the applicable Rules, including in response to further information from Uniloc or information discovered during discovery. Uniloc has not identified what elements or combinations it alleges were not known to one of ordinary skill in the art at the time. Therefore, for any claim limitation that Uniloc alleges is not disclosed in a particular prior art reference, Google reserves the right to assert that any such limitation is either inherent in the disclosed reference or obvious to one of ordinary skill in the art at the time in light of the same, or that the limitation is disclosed in another of the references disclosed above and in combination would have rendered the asserted claim obvious.

In addition, persons of ordinary skill in the art generally read a prior art reference as a

144906512.3
144906512.4

whole and in the context of other publications and literature. Thus, to understand and interpret any specific statement or disclosure within a prior art reference, such persons would rely on other information within the reference, along with other publications and their general scientific knowledge. As noted above, Google will rely upon the prior art references identified herein in their entirety, including un-cited portions.

Additionally, any reference or combination of references that anticipates or renders obvious an asserted independent claim also renders obvious any asserted claim dependent on that independent claim because every element of each dependent claim was known by a person of ordinary skill at the time of the alleged invention, and it would have been obvious to combine those known elements with the independent claims at least as a matter of common sense and routine innovation.

Google puts forth the below exemplary combinations that further demonstrate the obviousness of the asserted claims. Google is currently unaware of the extent, if any, to which Uniloc will contend that limitations of the claims at issue are not disclosed in the art identified by Google as anticipatory. To the extent that an issue arises with any such limitation, Google reserves the right to identify other references that would have made obvious the additional allegedly missing limitation to the disclosed device or method of operation.

In addition to the specific combinations of prior art and the specific combinations of groups of prior art disclosed, Google reserves the right to rely on any other combination of any prior art references disclosed herein.  Google further reserves the right to rely upon combinations disclosed within the prosecution history of the references cited herein.  These obviousness combinations reflect Google's present understanding of the potential scope of the claims that Uniloc appears to be advocating and should not be construed as Google's acquiescence to Uniloc's interpretation of the patent claims.

In *KSR*, the Supreme Court emphasized that an idea that is the result of ordinary innovation, ordinary skill, or common sense should not be patentable. *See KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398 (2007).  The Supreme Court held that a person of ordinary skill in the art is "a person of ordinary creativity, not an automaton" and "in many cases a person of ordinary skill in the art will be able to fit the teachings of multiple patents together like pieces of a puzzle." *Id.* at 420-21. Although a patent challenger is not required to show that one of ordinary skill in the art would have had a specific motivation to combine prior art references, such a showing may be helpful to the obviousness analysis. *Id.* at 418; *see also id.* at 402.

One of skill in the art would have been motivated to combine the references identified herein because, for example, the identified combinations fall into one or more of the following categories:

- A combination of elements known in the prior art according to known methods to yield a predictable result;

- A combination that is a simple substitution of one or more known elements for another to obtain a predictable result;

- A combination that involves using a known technique to improve a similar device or method in the same way;

- A combination that involves applying a known technique to a known device or method ready for improvement to yield a predictable result;

- A combination that results from a finite number of identified, predictable solutions with a reasonable expectation of success, such that the solution was one which was "obvious to try";

- A combination that results from known work in one field of endeavor prompting variations of it for use either in the same field or a different field based on design incentives or other

market forces in which the variations were predictable to one of ordinary skill in the art; and

- A teaching, suggestion, or motivation in the prior art that would have led one of ordinary skill in the art to modify the prior art reference or to combine the teachings of various prior art references to arrive at the claimed invention.

Further, the Federal Circuit has held that a motivation to combine references may be implicit for patents claiming an "improvement":

> [A]n implicit motivation to combine exists not only when a suggestion may be gleaned from the prior art as a whole, but when the "improvement" is technology independent and the combination of references results in a product or process that is more desirable, for example because it is stronger, cheaper, cleaner, faster, lighter, smaller, more durable, or more efficient. Because the desire to enhance commercial opportunities by improving a product or process is universal—and even commonsensical—we have held that there exists in these situations a motivation to combine prior art references even absent any hint of suggestion in the references themselves. In such situations, the proper question is whether the ordinary artisan possesses knowledge and skills rendering him capable of combining the prior art references.

*DyStar Textilfarben GmbH & Co. Deutschland KG v. C.H. Patrick Co.*, 464 F.3d 1356, 1368 (Fed. Cir. 2006). The prior art references identified herein explicitly or implicitly refer to other prior art references, share common authors or inventors, were published in the same journals, presented at the same conferences, were presented as proposals to standards working groups, and/or were developed at common companies, schools, or organizations, all of which would motivate one of skill in the art to combine them. These references are also within the field of the '654 patent and are directed to similar subject matter within that field. Additionally, any products, devices, or processes described in the references existed and/or were invented before or during the period in which the claimed inventions were developed, providing further motivation to combine them.

To the extent Uniloc challenges a combination of prior art with respect to a particular element, Google reserves all rights to supplement these contentions to further specify the motivation to

23

combine the prior art. Google may rely on cited or uncited portions of the prior art, other documents, and/or expert testimony to establish that a person of ordinary skill in the art would have been motivated to modify or combine the prior art so as to render the claims invalid as obvious.

## V.    INVALIDITY UNDER 35 U.S.C. § 101

In addition to and including the grounds of invalidity set forth in the Invalidity Contentions incorporated by reference herein, Google contends that all claims of the Asserted Patent are invalid under 35 U.S.C. § 101 because the claims are directed to an abstract idea and fail to describe an inventive concept. *See Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208 (2014).  For instance, Claims 1, 10 and 17 are generally directed for Section 101 purposes and under Uniloc's apparent constructions at disabling a device based on an inactivity timer.  This concept is abstract under Alice and the patent and claims add no inventive concept to it:  they do not improve the functioning of the device itself to make it faster or more efficient, and indeed admit that such inactivity or shutdown timers, even in devices with user identification modules that are linked to the device, were widely known in the art. *See* '654 patent, 1:21-36.  As shown herein, this is true.  Shutting down or "sleeping" a device based on inactivity was widely known years before the '654 patent was filed, including in Windows 95 and other operating systems  and other mobile devices, such as the Nokia 9000 and IBM Simon.  Moreover, linking a user identification module in such a device was also well known. *See, e.g.*, '654 patent, 1:21-36.

The dependent claims, meanwhile, add only postsolution functionalities such as disabling some features but not others or using or storing a PIN or identification number with the device. These do nothing to change the abstract nature of the claims or their lack of inventive concept.

## VI.    LOCAL PATENT RULE 3-3(D)

In addition to and including the grounds of invalidity set forth in the Invalidity Contentions

incorporated by reference herein, Google contends that the asserted claims of the Asserted Patent are invalid under 35 U.S.C. § 112, paragraphs one and/or two for at least the following reasons.

## A.      Lack of Written Description and/or Enablement under 35 U.S.C. §112(1)

35 U.S.C. § 112, ¶ 1 requires that the specification contain a written description of the invention. "[T]he hallmark of written description is disclosure." *Boston Scientific Corp. v. Johnson & Johnson*, 647 F.3d 1353, 1361-62 (Fed. Cir. 2011) (citation omitted). The test for whether a specification adequately describes an invention is "whether the disclosure of the application relied upon reasonably conveys to those skilled in the art that the inventor had possession of the claimed subject matter as of the filing date. . . . [T]he test requires an objective inquiry into the four corners of the specification from the perspective of a person of ordinary skill in the art. . . . [It] is a question of fact." *Ariad Pharms., Inc. v. Eli Lilly & Co.*, 598 F.3d 1336, 1351 (Fed. Cir. 2010) (*en banc*); *Boston Scientific*, 647 F.3d at 1362.

The enablement requirement of § 112 demands that the patent specification enable "those skilled in the art to make and use the full scope of the claimed invention without 'undue experimentation.'" *Genentech, Inc. v. Novo Nordisk A/S*, 108 F.3d 1361, 1365 (Fed. Cir. 1997) (quoting *In re Wright*, 999 F.2d 1557, 1561 (Fed. Cir. 1993)). "[T]he scope of the claims must be less than or equal to the scope of the enablement." *Nat'l Recovery Tech., Inc. v. Magnetic Separation Sys., Inc.*, 166 F.3d 1190, 1196 (Fed. Cir. 1999).

With respect to how to perform the steps of the alleged inventions of the asserted claims, the '654 patent does not provide any substantial disclosure beyond that found in the prior art, including the prior art items identified in these Invalidity Contentions. As a result, Uniloc cannot contend that (1) the '654 patent would have enabled a person of ordinary skill to make the alleged inventions within the full scope of the asserted claims, while contending that (2) the prior art does not. To the extent Uniloc contends that any of the prior art does not provide an enabling description

of the alleged inventions, the '654 patent also fails to provide an enabling disclosure of the alleged inventions.

The disclosure of the '654 patent fails to enable those skilled in the art to make and use the full scope of the claimed invention without undue experimentation at least with respect to the following limitations, rendering invalid each claim in which the element appears:

- "blocking means"
- "timing means"
- "deblocking means"
- "locking means"
- "block means"
- "connecting means"
- "linked user identification module"
- "verfying a user identification module...is linked to the mobile radiotelephony device"
- "preventing the normal operation of the mobile radiotelephony device in response to the verification of the linked user identification module"
- "preventing the normal operation of the mobile radiotelephony device in response to the verification of the linked user identification module and in response to the detection of the period of inactivity of the mobile radiotelephony device"
- "normal operation of the mobile radiotelephony device"
- "deblocking code"
- "detecting a period of inactivity"

The specification fails to provide a written description as to the following claim elements rendering invalid each claim in which the element appears:

- "blocking means"

- "timing means"

- "deblocking means"

- "locking means"

- "block means"

- "connecting means"

- "linked user identifying module"

- "verfying a user identification module...is linked to the mobile radiotelephony device"

- "preventing the normal operation of the mobile radiotelephony device in response to the verification of the linked user identification module"

- "preventing the normal operation of the mobile radiotelephony device in response to the verification of the linked user identification module and in response to the detection of the period of inactivity of the mobile radiotelephony device"

- "normal operation of the mobile radiotelephony device"

- "deblocking code"

- "detecting a period of inactivity"

The '654 patent also fails to provide sufficient written description or enabling disclosure for the identified "means" terms.  For example, no examples or description in the '654 patent disclose the corresponding structure, material, or acts of the claimed "blocking means," "timing means," "deblocking means," "locking means," "block means," or "connecting means," nor would one of ordinary skill in the art be familiar with such a term.  Accordingly, claims 1, 3, 4, 5 and are invalid for lacking sufficient written description and/or enabling disclosure.

In addition, the '654 patent fails to provide sufficient written description or enabling disclosure for the "linked user identification module" and "verifying.a user identification module...is linked" terms. The full scope of the claims, including as Uniloc has asserted them, was

144906512.3
144906512.4

neither described nor enabled.  For example, no examples or description in the '654 patent disclose how or in what circumstances a user identification module becomes "linked" to the claimed radiotelephony device or that the inventor possessed a method or capability to verify that they are linked, nor would one of ordinary skill in the art have been familiar with such terms. Accordingly, claims 1, 3-5, 10, 11, and 13 are invalid for lacking sufficient written description and/or enabling disclosure.

**B.      Indefiniteness under 35 U.S.C. § 112(2)**

Claims are indefinite under 35 U.S.C. § 112, ¶ 2 when they "fail to inform, with reasonable certainty, those skilled in the art about the scope of the invention." *Nautilus, Inc. v. Biosig Instruments, Inc.*, 134 S. Ct. 2120, 2124 (2014).

As required by P. R. 3-3(c), Google identifies each claim element governed by 35 U.S.C. § 112, ¶ 6. The presence of the word "means" in a claim element creates a rebuttable presumption that § 112, ¶ 6 applies. *Williamson v. Citrix Online, LLC*, 792 F.3d 1339, 1348 (Fed. Cir. 2015). However, absence of "the word 'means' does not automatically prevent [a claim] element from being construed as a means-plus-function element." *Id.* (quoting *Personalized Media Commc'ns, LLC v. Int'l Trade Comm'n*, 161 F.3d 696, 703-04 (Fed. Cir. 1998)). The essential inquiry under 35 U.S.C. § 112, ¶ 6 is not the presence or absence of the word "means" but whether the words of the claim are understood by persons of ordinary skill in the art to have a sufficiently definite meaning as the name for structure.  *Id.*  A means-plus-function element is "construed to cover the corresponding structure, material, or acts described in the specification and equivalents thereof." 35 U.S.C., § 112, ¶ 6.  However, claims governed by 35 U.S.C. § 112, ¶ 6 are indefinite if "the claim term fails to recite sufficiently definite structure or else recites function  without reciting sufficient structure for performing that function." *Williamson*, 792 F.3d at 1348.

Means plus function claims directed to software require the specification to disclose an

algorithm corresponding to the claimed function. *See EON Corp. IP Holdings LLC v. AT & T Mobility LLC*, 785 F.3d 616, 621 (Fed. Cir. 2015); *WMS Gaming, Inc. v. Int'l Game Tech.*, 184 F.3d 1339, 1348-49 (Fed. Cir. 1999); *Aristocrat Techs. Austl. Pty Ltd. v. Int'l Game Tech.*, 521 F.3d 1328, 1333 (Fed. Cir. 2008). The specification can express the algorithm "in any understandable terms including as a mathematical formula, in prose, or as a flow chart, or in any other manner that provides sufficient structure." *Finisar Corp. v. DirecTV Grp.*, 523 F.3d 1323, 1340 (Fed. Cir. 2008) (citations omitted). But it must disclose some algorithm; it cannot merely restate the function recited in the claim. *Id.*; *see also Blackboard v. Desire2Learn, Inc.*, 574 F.3d 1371, 1383 ("The ACM is essentially a black box that performs a recited function. But how it does so is left undisclosed."); *ePlus, Inc. v. Lawson Software, Inc.*, 700 F.3d 509, 518 (Fed. Cir. 2012) (holding that "black box" labeled "Purchase Orders" was insufficient structure to perform the "generate purchase orders" function); *Noah Sys., Inc. v. Intuit Inc.*, 675 F.3d 1302, 1317 (Fed. Cir. 2012) ("[T]he disclosure must identify the method for performing the function, whether or not a skilled artisan might otherwise be able to glean such a method from other sources or from his own understanding.").

Moreover, a claim term is indefinite where the claims, specification, and prosecution history do not "convey with reasonable certainty the measure of [a given variable] to be used." *Teva Pharms. USA, Inc. v. Sandoz, Inc.*, 789 F.3d 1335, 1341 (Fed. Cir. 2015) (holding that "having a molecular weight of . . ." was indefinite as there were at least three different ways of measuring molecular weight and the intrinsic record did not convey which measure to use); *see also Honeywell Int'l, Inc. v. Int'l Trade Comm'n*, 341 F.3d 1332, 1339-40 (Fed. Cir. 2003) (holding indefinite a claim including a numeric limitation, "melting point elevation," without disclosing which of multiple methods of measuring that number should be used).

In addition to Google's reservation of rights stated above, Google notes that the Court's

Docket Control Order contemplates that all indefiniteness issues be brought to the Court's attention through the *Markman* briefing process (*see* Dkt. 36 at 4), which begins on January 7, 2020, Google's detailed arguments as to indefiniteness will be presented at that time, through the *Markman* meet and confer and briefing process.

Claim 4 is invalid as indefinite pursuant to 35 U.S.C. § 112, ¶ 2 because the term "facilitating an activation of the block means by the timing means" is indefinite because the specification "fail[s] to inform, with reasonable certainty, those skilled in the art about the scope of the invention." For example, "block means" lacks antecedent basis, and there are no examples or descriptions in the '654 patent which mention or discuss "block means" or which disclose the corresponding structure and/or function of the "block means." To the extent the patentee meant "blocking means," there are no examples or descriptions in the '654 patent which denote how the claimed locking means "facilitat[es]" activation of the blocking means by the timing means.

The limitations listed below are governed by § 112, ¶ 6 because the claim language is not understood by persons of ordinary skill in the art to have a sufficiently definite meaning as the name for structure. Each of the claims in which these limitations appear is indefinite because the specification fails to disclose, or clearly link or associate, the structure, material, or acts corresponding to the listed limitation in the claim.

- Claims 1 and 3-5 of the '654 patent:

  - "blocking means for preventing a normal operation of the mobile radio telephony device"

  - "timing means for activating the blocking means in response to the mobile radiotelephony device being inactive during the normal operation of the mobile radiotelephony device for a defined period of time subsequent to a mounting of a linked user identification module inside the mobile radiotelephony device"

144906512.3
144906512.4

- o "deblocking means for permitting the normal operation of the mobile radiotelephony device in response to a supply of a deblocking code to the mobile radiotelephony device subsequent to the mounting of the linked user identification module inside the mobile radiotelephony device and subsequent to the defined period of time"

  o "normal operation of the mobile radiotelephony device"

  o "preventing a normal operation of the mobile radiotelephony device"

- Claim 4 of the '654 patent:

  o "locking means for facilitating an activation of the block means by the timing means"

  o "block means"

- Claim 5 of the '654 patent:

  o "connecting means for establishing a link between the mobile radiotelephony device and the linked user identification module"

- Claims 10, 11, and 13 of the '654 patent:

  o "in response to"

  o "normal operation of the mobile radiotelephony device"

  o "preventing the normal operation of the mobile radiotelephony device"

  o "preventing the normal operation of the mobile radiotelephony device in response to the verification of the linked user identification module and in response to the detection of the period of inactivity of the mobile radiotelephony device"

  o "detecting a period of inactivity"

## VII. P.R. 3-4 Document Production

### A.    Documents Related to Accused Instrumentalities Under P.R. 3-4(a)

144906512.3
144906512.4

Because of serious deficiencies in Uniloc's Infringement Contentions required by P. R. 3-1, Google still does not know with any clarity what Google functionality Uniloc is accusing. With the express reservations of rights to supplement its P. R. 3-4(a) disclosures, and based on its current understanding of Uniloc's Infringement Contentions, Google has produced and continues to produce source code and documentation sufficient to show the operation of functionalities that Google understands are accused of infringement.

**B.     Documents Related to Prior Art Under P.R. 3-4(b)**

Pursuant to P. R. 3-4(b), Google is producing concurrently with these Invalidity Contentions documents bates labeled GOOG-UNI493-PA-00000001 --  GOOG-UNI493-PA-5072, reflecting the prior art references identified above and/or in the attached charts in connection with Google's P. R. 3-3(a) disclosures.  Google also hereby makes available for inspection at the offices of Perkins Coie LLP in Seattle, WA, the following devices: Nokia 9000i Communicator, Nokia 9110 Communicator, IBM Simon, Qualcomm QCP 1960, 3Com Etherlink 10/100 Mbps PCI Network Interface Card,  Ericsson R320s, Ericsson I 888 World, and Ericsson SH 888.

144906512.3
144906512.4

Dated:  July 15, 2019

Respectfully submitted,

*/s/ Ryan J. McBrayer*
Ryan J. McBrayer
Theresa H. Nguyen
rmcbrayer@perkinscoie.com
rnguyen@perkinscoie.com
PERKINS COIE LLP
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Telephone: (206) 359-3073
Facsimile: (206) 359-4073

Michael E. Jones
State Bar No. 10929400
mikejones@potterminton.com
POTTER MINTON LLP
110 N. College Avenue, Suite 500
Tyler, TX 75702
Telephone: (903) 597-8311
Facsimile: (903) 593-0846

*Attorneys for Google LLC*

144906512.3
144906512.4

## CERTIFICATE OF SERVICE

The undersigned certifies that on July 15, 2019, a true and correct copy of Google's Invalidity Contentions including the above pleading and associated claim charts was served on all counsel of record via electronic mail.

*/s/ Ryan J. McBrayer*
Ryan J. McBrayer

144906512.3
144906512.4

35